# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 10, 2010

## STATE OF TENNESSEE v. ALVIN PHILLIPS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-B-1782     Steve Dozier, Judge**

---

**No. M2009-02320-CCA-R3-CD - Filed May 31, 2011**

---

Appellant, Alvin Phillips, was indicted by the Davidson County Grand Jury for aggravated assault by the use or display of a deadly weapon.  After a bench trial, Appellant was convicted of the charge.  Appellant was later sentenced to four years as a Range I, standard offender.  He was ordered to serve the sentence on supervised probation and attend domestic violence counseling.  On appeal, he argues that the evidence was insufficient to sustain the conviction.  After a review of the record, we determine that the evidence was sufficient to support the conviction.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennent, Assistant District Attorney General; and Chase T. Smith, Assistant District Attorney General, Nashville, Tennessee, for the appellant, Alvin Phillips.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Jennifer McMillen, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## I. Background

In April of 2009, Appellant was indicted after an incident at his home on February 23, 2009, during which he allegedly struck his wife, Cecilia Phillips, in the head with a metal folding chair during an argument.

Appellant waived his right to a jury trial. At trial, Mrs. Phillips testified that she and Appellant were still married but were separated and she was currently living in California. At the time of trial, they had been married for eighteen years. The couple had separated before; most of their problems resulted from the couple's issues with drug addiction.

Prior to the incident at issue herein, Mrs. Phillips told Appellant that she wanted to separate again. Appellant "wanted to end the marriage." Appellant went out of town for the weekend, and Mrs. Phillips started to divide up their property.

Mrs. Phillips recalled that on the night of February 22, 2009, at around 6:00 p.m., she and Appellant were "bickering" about a pillowcase. Appellant disagreed with the way that Mrs. Phillips had divided up some of the property. Appellant was in the bedroom watching a movie. Mrs. Phillips stated that "a fight broke out" during which Appellant told her to "put the things back in the linen closet." When Mrs. Phillips refused, Appellant "came from the bedroom, he took the chair, he hit the table, which broke the cell phone [and] the house phone. . . . And he hit me on the side of the head with the chair." The chair was folded at the time. Mrs. Phillips was hit "right in the face" and suffered a cut to her eye. She was unable to stop the bleeding. Appellant tried to help her after he injured her, holding a package of frozen hamburger against her forehead. At trial, Mrs. Phillips identified pictures of her injuries as well as pictures of the broken phones, the bloody clothing that she was wearing during the attack, and the chair with which Appellant struck her in the face.

Mrs. Phillips described her injury as "serious" despite the fact that she did not seek medical treatment and actually spent the night with Appellant on the night of the incident. Mrs. Phillips testified that the "verbal abuse" continued after Appellant hit her. Appellant instructed her to "stand up, . . . and I'll kill you." Appellant allowed Mrs. Phillips to use his cell phone to call her relatives, but she did not tell them what had happened because "she was afraid to [tell them]."

Mrs. Phillips called the police the next day after going to work for part of the day. A police officer took photographs of the victim's injuries and home. Mrs. Phillips claimed that she was "afraid" to call the police after the incident and instead waited until Appellant was

at work. Mrs. Phillips stated, "no one knows how he is when you're in the house with him and he's angry."

Officer Willie Reaves of the Metro Police Department responded to the domestic violence call placed by Mrs. Phillips. Officer Reaves noticed a cut above Mrs. Phillips' right eye, which was swollen. Officer Reaves could not estimate the size of the cut but described it as "visible" when he looked at Mrs. Phillips. Officer Reaves remembered that Mrs. Phillips told him that Appellant hit her and that she was "afraid." Mrs. Phillips informed the officer that she did not go to the hospital because Appellant told her not to leave and that he would "kill" her if she got up. Another officer arrived on the scene and took photographs of the injuries and the area where the attack occurred.

Appellant testified in his own behalf. His version of the events varied greatly from that of Mrs. Phillips. Appellant claimed that when he came home from being out of town, Mrs. Phillips was on the phone. Appellant left to go to the store and Mrs. Phillips was still on the phone when he returned. At that time, Appellant went to the bedroom to watch a movie. When Mrs. Phillips got off the phone, she entered the bedroom to talk to Appellant.

Appellant recalled that during a discussion of the divorce, Mrs. Phillips became upset. Appellant stated that the argument continued for twenty to twenty-five minutes. Appellant returned to the bedroom and Mrs. Phillips continued to rant and rave. Appellant stated that he "got agitated" and told her that he would "destroy" the phones because she loved them so much. Appellant admitted that he picked up a folding chair and smashed the phones. Appellant claimed that "something flew off the table and hit her across the eye." Appellant stated that he immediately came to Mrs. Phillips' aid by putting frozen hamburger meat on Mrs. Phillips' wound. He described the cut as one-eighth of an inch long.

Appellant admitted a prior conviction for theft but denied being a dishonest person. At the conclusion of the proof, the trial court accredited the testimony of Mrs. Phillips and found Appellant guilty of aggravated assault by use or display of a deadly weapon. After a subsequent sentencing hearing, Appellant was sentenced to four years as a Range I, Standard offender. The trial court suspended the sentence, placing Appellant on probation. Appellant was also ordered to attend domestic violence classes.

Appellant filed a timely notice of appeal.

## II. Analysis

On appeal, Appellant complains that the evidence is insufficient to support the conviction for aggravated assault. Specifically, Appellant contends that the chair, "as used

-3-

in the instant case," was not a deadly weapon because Appellant used the chair with the intent of destroying the telephones rather than as a means of inflicting serious bodily injury upon the victim. However, Appellant concedes that a chair can potentially be used as a deadly weapon. The State insists that the evidence is sufficient to support the conviction.

When a defendant challenges the sufficiency of the evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Once a jury (or, as in this case, the trial court in a bench trial) finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The trier of fact is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this Court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Appellant was charged with the aggravated assault of Mrs. Phillips. As relevant here, a person commits aggravated assault who "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . uses or displays a deadly weapon." T.C.A. § 39-13-102. "A person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." *Id*. § 39-13-101(a)(2). A deadly weapon is defined as "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(a)(5)(B).

Viewing the evidence in a light most favorable to the State, we conclude that the evidence is sufficient for a rational trier of fact to find Appellant guilty of aggravated assault beyond a reasonable doubt. Mrs. Phillips testified at trial that Appellant struck her in the face with the metal folding chair and threatened to "kill" her if she got up. Mrs. Phillips was so afraid of Appellant that she did not seek medical treatment and waited to call the police until Appellant was at work the next day. Appellant contradicted this story, claiming instead that he smashed the phones with the chair and a piece of something flew across the room and hit Mrs. Phillips in the eye, causing her to suffer an injury.

-4-

Also, on appeal, Appellant specifically asserts that the State failed to prove beyond a reasonable doubt that the chair was a "deadly weapon," relying upon *State v. McGouey*, 229 S.W.3d 668 (Tenn. 2007). In *McGouey*, our supreme court held that if an item is not a deadly weapon *per se* it will only be considered a deadly weapon "if the defendant in a particular case actually used or intended to use the item to cause death or serious bodily injury." *McGouey*, 229 S.W.3d at 673. Appellant asserts that the State failed to prove his intent was to cause death or serious bodily injury. Appellant's intent, of course, can be proven by circumstantial evidence. Appellant's actions with the chair, first slamming it on the table and smashing two telephones before striking the victim in the face, coupled with his verbal threats, are clearly sufficient proof that the chair was a "deadly weapon" as interpreted in *McGouey*.

It is well-established law in Tennessee that the testimony of a victim, standing alone, is sufficient to support a conviction. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). While the court was not solely presented with the testimony of the victim herein, the trial court was presented with contradictory accounts of the events that transpired on the evening in question. As previously stated, questions regarding the credibility of witnesses and the weight and value of the evidence presented at trial are issues that are resolved by the trier of fact and this Court will not re-weigh or re-evaluate this evidence. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000). The trial court specifically accredited the testimony of the victim. In so doing, the trial court necessarily determined that Appellant intended to use the chair as a deadly weapon at the time of the assault. The evidence is sufficient to support the conviction. Appellant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE